# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ANTHONY NELSON, JR., | ) | |
| | ) | |
| Movant, | ) | |
| | ) | No. 2:18-cv-02010-TLP-tmp |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DENYING AND DISMISSING MOTION UNDER 28 U.S.C. § 2255, GRANTING CERTIFICATE OF APPEALABILITY, AND CERTIFYING THAT AN APPEAL WOULD BE TAKEN IN GOOD FAITH

Movant Anthony Nelson, Jr.[1] moves under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Amended § 2255 Motion").  (ECF No. 5.) Respondent United States of America responded in opposition.  (ECF No. 10.)  Respondent also supplemented its answer after the Court directed it to do so.  (ECF Nos. 17 & 18.)  For the reasons stated below, the Court **DENIES** Movant's Amended § 2255 Motion.

## BACKGROUND

### I.    Movant's Criminal Case

In June 2016, a federal grand jury in the Western District of Tennessee returned a superseding indictment against Movant and others.  (*See* Cr. No. 2:16-cr-20036-JTF-1, ECF No. 59.)  The indictment charged Movant with these counts: (1) conspiracy to possess oxycodone with the intent to distribute in violation of 21 U.S.C. § 846 ("Count One"); (2) conspiracy to

---

[1] Movant is an inmate at the United States Penitentiary ("USP") in Bruceton Mills, West Virginia.  His Bureau of Prisons ("BOP") register number is 29543-076.

possess 50 kilograms of marijuana with the intent to distribute in violation of 21 U.S.C. § 846 ("Count Two"); (3) carrying firearms during and in relation to a drug trafficking crime, and in the course of such offense, discharging a firearm in violation of 18 U.S.C. § 924(c) ("Count Three"); (4) being a felon in possession of a firearm in violation of 18 U.S.C. § 924(g) ("Count Four"); (5) and conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) ("Count Six").  (Cr. ECF No. 59.)  The grand jury did not charge Movant in Count Five of the indictment.  (*Id.*)

## A.    Factual Basis for Movant's Charges

Government counsel summarized the factual basis for the charges during Movant's change of plea hearing:

> Had this matter gone to trial the facts would have been that on or about June of 2015 the DEA along with the Shelby County Sheriff's Office Narcotics Unit, Memphis Police Department Organized Crime Unit, United States Postal Inspector's Office began an investigation into the Anthony Nelson, Jr. Drug Trafficking Organization ("DTO").  Nelson, Jr. was identified as the head of the organization.  Agents ultimately determined that the DTO was trafficking in oxycodone and marijuana from California utilizing the United States Postal Service, along with conducting acts of violence in the Memphis, Tennessee area. The DTO then distributes the oxycodone and marijuana to mid-level dealers who in turn distribute the illegal drugs to low-level dealers and use[rs] in the Shelby County area.  In June of 2015 investigators were able to identify or utilize a confidential source to purchase what was believed to be oxycodone pills from Brandon Brown.  Upon laboratory confirmation investigators learned that the suspected oxycodone pills were actually a mixture of heroin and Fentanyl that had been compressed into a pill form.  Based on this purchase investigators were able to initiate a federal T-III intercept of one of Brown's phones.  During the interception of Brown's phone investigators were able to identify three other phones that were being utilized by Anthony Nelson, Jr., again the head of the DTO and the local source of supply of oxycodone and marijuana.  While intercepting the three cellular phones belonging to Nelson, Jr. investigators were able to determine that Nelson, Jr. was traveling to California where he had an apartment in the Long Beach, California area.  Investigators learned that Nelson, Jr. had multiple sources of supply that he was utilizing in California to obtain large amounts of oxycodone pills and marijuana.  Nelson, Jr. would then ship the oxycodone pills and marijuana back to Memphis where Nina Echols and Brandon Brown would then secure and dispense the illegal drugs. During the course of the investigation investigators were

able to intercept a package containing 442 oxycodone, 100 dilaudid, 416 xanax pills that Nelson, Jr. mailed from California [ ] to Memphis, Tennessee. Based upon seizures, undercover buys and the intercepted calls the defendant conspired to possess with the intent to distribute the equivalent of four hundred kilograms but less than seven hundred kilograms of marijuana.

Based on information derived from the target telephone four belonging to the defendant[,] agents were able to respond in acts of violence in which Nelson, Jr. and Anthony Burrow were involved. Investigators learned that there was [sic] a series of shootings that occurred between Nelson, Jr., Burrow and Demarcus Boyd that span between January 23, 2016 to January 31 of 2016. Based on the intercepted calls investigators learned that Nelson, Jr. sold Boyd some oxycodone pills and Boyd accused Nelson of selling him fake pills. This argument escalated into Boyd going to Nelson, Jr.'s residence on Standridge and shooting the house up. In turn Nelson, Jr. and Burrow retaliated by hunting down Boyd and his associates and shooting at them. During the course of the shootings Darren Hill was hit by a bullet in the arm. On January 31, 2016 Nelson, Jr., and Burrow were arrested and found to be in possession of two handguns, a Smith & Wesson .40 caliber and Glock nine-millimeter pistol. At the time of arrest both had previously been convicted of a felony. The firearms have been examined by a member of the ATF and found to be manufactured outside the state of Tennessee. Further, agents learned that both handguns were reported stolen on two different occasions.

As to Count Six the evidence would further show that Anthony Nelson, Jr., Anthony Nelson, Sr., Nina Echols and Brandon Brown conspired to commit the offense against the United States in violation of 18 U.S.C. Section 1956. As detailed in the indictment the defendants deposited and/or withdrew cash derived from the sale of narcotics into or from several funnel accounts in the name of Anthony Nelson, Jr., Monica Perez and Nina Echols in amounts less than the threshold amount of ten thousand dollars. It was further a part of the conspiracy that Nelson, Sr. would hold drug proceeds for safekeeping and as directed would distribute those proceeds to coconspirators to further the illegal drug trafficking. While holding drug proceeds for safekeeping Nelson, Sr. exchanged smaller denominations for larger denominations bills at Regions Bank. When Nelson, Jr. would travel from Memphis to California [Nelson Jr.] would have Nelson, Sr. and/or Brandon Brown give him or Nina Echols the money needed to purchase the illegal drugs. The money was then deposited in Memphis and withdrawn in California.

(Cr. ECF No. 185 at PageID 754–58.) The Court now turns to Movant's plea agreement.

## B.   Movant's Plea Agreement

In November 2016, Movant entered a written plea agreement and pleaded guilty to all counts with which he was charged. (Cr. ECF Nos. 99 & 100.) The plea agreement provided:

The Defendant, ANTHONY NELSON, JR., by and through his counsel Lorna McClusky, knowingly and voluntarily agrees with the United States, through Edward L. Stanton III, United States Attorney for the Western District of Tennessee, and through Michelle Kimbril-Parks, the undersigned Assistant United States Attorney, to enter a plea of guilty to **Count One**-Conspiracy to possess with the intent to distribute oxycodone in violation of 21 U.S.C. § 846; **Count Two**-Conspiracy to possess with the intent to distribute marijuana in violation of 21 U.S.C. § 846; **Count Three**-Possession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c); **Count Five**[2]-Convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g); and, **Count Six**-Conspiracy to engage in money laundering in violation of 18 U.S.C. § 1956(h).

1.      The Defendant agrees that:

    a.      He is pleading guilty to the aforementioned counts because he is guilty of the charges contained within.

    b.      Neither the United States, nor any law enforcement officer, can or has made any promises or representations as to what the sentence imposed by the court will be.

    c.      If he had proceeded to trial and had been convicted, he would have had the right to appeal the conviction.  He understands that by pleading guilty, he gives up the right to appeal the conviction.   Based on concessions made in this plea agreement by the United States, he also hereby waives his rights to appeal his sentence, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure from the guideline range that the Court establishes at sentencing.

    d.      Except with respect to claims of ineffective assistance of counsel or prosecutorial misconduct, he waives his rights to challenge the sufficiency or the voluntariness of his guilty plea on direct appeal or in any collateral attack.

    e.      The special assessment of $500 is due and payable to the U.S. District Court Clerk's Office, and the Defendant agrees to provide the United States with evidence of payment immediately after sentencing.

    f.      This writing constitutes the entire Plea Agreement between the Defendant and the United States with respect to the plea

---

[2] Someone crossed out "Five" and wrote "Four" above it.  (Cr. ECF No. 100 at PageID 201.) The parties initialed the change.  (*Id.*)

of guilty.  No additional promises, representations or inducements, other than those referenced in this Plea Agreement, have been made to the Defendant or to the Defendant's attorney with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.

2.    The Defendant understands that:

a.    Given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose the Defendant receiving acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1, providing the Defendant continues to demonstrate an affirmative acceptance of responsibility, including acknowledging guilt in open court to the facts as set out in the indictment.

b.    If the United States receives information between the signing of this agreement and the time of the sentencing that the Defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including, but not limited to, participation in any additional criminal activities between now and the time of sentencing, this position could change.

c.    Whether or not acceptance of responsibility credit pursuant to § 3E1.1 is granted is a matter to be determined by the Court.    Failure of the Court to grant acceptance of responsibility credit is not a basis for the Defendant to withdraw his guilty plea.

d.    Should it be judged by the United States that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstruction or impeding justice within [the] meaning of U.S.S.G. § 3C1.1 from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing, or if the Defendant attempts to withdraw the plea, the government will be released from its obligations and would become free to argue for any sentence within the statutory limits.  Such a breach by the Defendant would not release the Defendant from the plea of guilty.

e.    Any statement made in the course of the plea colloquy may be used against him in any criminal prosecution.  The

Defendant knowingly, intelligently and voluntarily waives any objection based on Federal Rules of Evidence 410.

3.      The Parties agree to recommend to the Court that the drug amount be limited to the equivalent of 400KG but less than 700 KG of marijuana pursuant to Rule 11(c)(1)(C), and that the Court may accept or reject this quantity immediately, or may postpone its decision until the Court has had the opportunity to review a presentence investigation report.  The Parties understand that, if the Court rejects the terms of this Plea Agreement, both Parties will be given the opportunity to withdraw from the Agreement.

4.      The Defendant agrees to forfeit to the United States a money judgment in the amount of one million dollars in U.S. currency or in the form of substitute property, a sum of money representing the aggregate of the proceeds realized as a result of the violations alleged in Counts 1 and 2 of the indictment, for which the defendants are jointly and severally liable.

5.      By signing this agreement, the Defendant affirms that he is satisfied with his lawyer's counsel and representation, and hereby freely and voluntarily enters into this plea agreement.  The Defendant understands that this writing constitutes the entire Plea Agreement between the Parties with respect to the plea of guilty.  No additional promises, representations or inducements have been made to the Defendant or to the Defendant's attorney with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.

(Cr. ECF No. 100 at PageID 201–04 (emphasis in original).)  Movant signed the plea agreement.

(*Id.* at PageID 204.)

## C.      Movant's Sentencing

The Presentence Report ("PSR") calculated a criminal history category of IV and a total offense level of 35, resulting in an effective Guidelines range of 235 to 293 months for Counts One, Two, Four, and Six.  (Cr. ECF No. 140 at PageID 509.)  But the binding provisions of the plea agreement reduced the total offense level to 31, which in turn reduced the guideline imprisonment range for Counts One, Two, Four, and Six from 151 months to 188 months.  (*Id.*)  Count Three, the § 924(c) count, carried a statutory minimum term of imprisonment of at least ten years, consecutive to any other sentence.  *See* U.S.S.G. § 2K2.4(b); (*Id.*)

6

Movant gave the following written statement to the probation officer:

I apologize for having gotten involved in drugs.  I was wrong to do that and wrong to go out to California and bring drugs back to this community.  I should not have been involved with drugs and guns.

I have hurt my family by my choices.  I saw my son, nine years old, cry because I've done wrong things.  I apologize to him and all my family.  My family did the best they could to raise me.  My mom was murdered when I was about four years old.  My dad was in and out of federal prison, so I was left with older relatives to raise me.

As I grew older, they grew older.  They couldn't protect me from the streets.  It just seems one day I was young and agreed to help somebody out on a drug deal, next thing I'm going to make one trip to California and then I'm involved in a conspiracy that has taken over my life.

My family loved me.  They didn't raise me to do this I didn't intend to be a drug dealer.

Since I've been locked up, I've gotten to look at my life.  I can see all the bad choices I made.  But I know I will not make those choices again.  Time to see myself for what I was has also given me time to see who I can be.  A good man, a good father and a good decision maker.

(*Id.* at PageID 490.)

The PSR also explains Count Three:

28.    In an intercepted phone conversation on January 31, 2016, **Anthony Nelson, Jr.** informed Anthony Nelson, Sr. about being a victim of a drive-by shooting.  In a subsequent conversation on the same date, **Nelson, Jr.** discussed the need to obtain 500 to 1,000 rounds of ammunition and an extended magazine for a Glock.  In a further conversation, **Nelson, Jr.** and Nelson, Sr. discussed the higher police presence in the neighborhood and the risk of getting caught with guns and drugs.  In subsequent conversations, **Nelson, Jr.** advised that Burrow had fired back at the shooters conducting the drive by.  There are several conversations regarding plans to retaliate against the suspects in the drive-by shootings.

29.    The investigation determined that in the early morning of January 31, 2016, multiple gunshots had been fired at **Anthony Nelson, Jr.'s** residence at 1496 Standridge.  The investigation into the shooting indicated approximately 27 rounds, including .223 rifle rounds, were fired at the residence.  Further investigation revealed that there had been a previous drive-by shooting at 1496 Standridge on January 23, 2016, in which Echols

7

reported being in the residence when approximately 21 .223 rounds were fired into the residence. Demarco Boyd was suspected of being involved in this shooting as he had stopped by prior to the shooting looking for **Nelson, Jr.** Subsequent investigation revealed that there were multiple shootings in the area of Standridge Street between January 23, 2016 and January 31, 2016. On January 23, 2016, Lakeisha Hernandez's residence at 277 W. Johnson Street was shot at. In another incident on January 24, 2016, Jaron Hill was shot in the left lower arm while in a vehicle in the area of 1135 Standridge. Hill was reportedly occupying the same vehicle reported to have been involved in the drive by shooting of 1496 Standridge during the evening of January 23, 2016. One interview conducted during these investigations contains information that **Nelson, Jr.** was a Grape Street Crip gang member.

30.  Intercepted phone conversations from January 31, 2016, indicated that **Nelson, Jr.** and Anthony Burrow had retaliated and shot at the persons thought to be responsible for the drive-by shootings at 1496 Standridge. The intercepted calls indicate **Nelson, Jr.** and Burrow pursued the suspects in a rental car and Burrow exchanged gunfire with the suspects resulting in their rental car being hit with gunfire. In a subsequent incident, **Nelson, Jr.** and Burrow discussed locating "Nick" near the B52 market at Hollywood and Eldrige and subsequently shooting at "Nick" while he drove down Elridge Street. Due to the risk of further retaliation, the case agents decided to locate and arrest **Nelson, Jr.** and Burrow. In the late afternoon, the case agents located **Nelson, Jr.** and Burrow at the gas station at 630 N. Highland. Nelson, Jr. and Burrow were occupying a Toyota Camry on the gas station lot. The case agents then observed Brown arrive in a second vehicle. **Nelson, Jr.** and Brown proceeded into the store. The case agents then detained all three subjects. A search of the Camry resulted in the recovery of a loaded **Smith and Wesson .40 caliber pistol (serial no. HEB9646)**, a loaded **Glock 9mm pistol (serial no. MKU495)**, a box containing 100 .40-caliber rounds, a box containing 50 9mm rounds and another box containing 12 .40-caliber rounds. A loaded extra magazine for the Glock was found in the passenger side door pocket. A small amount of cocaine (1.2 grams TGW) and a small baggie of marijuana (3.9 grams TGW) were found in the center console. The Glock pistol was found to have been reported stolen in a residential burglary in September 2014. Forensic examination of the recovered shell casings recovered from the shootings at 277 W. Johnson on January 23, 2016, and the shooting at 1135 Standridge on January 24, 2016, were matched with the Glock 9mm pistol recovered on January 31, 2016. Further, recovered shell casings from the 1135 Standridge shooting on January 24, 2016, were matched to the Smith and Wesson .40 caliber pistol recovered on January 31, 2016.

(Cr. ECF No. 140 at PageID 485–86 (emphasis in original).)  Having reviewed the PSR with his attorney, Movant made no objections to the facts or guideline calculations in it.  (Cr. ECF No. 164.)

At the sentencing hearing, United States District Judge John T. Fowlkes, Jr. accepted the PSR's findings of fact and conclusions of law.  (Cr. ECF Nos. 177 & 178.)  He also accepted the plea agreement.  (*Id.*)  Under U.S. Sentencing Guidelines ("U.S.S.G.") § 5K1.1 and 18 U.S.C. § 3553(e), he granted a downward departure from the lowest end of the guideline imprisonment range—355 months total—and sentenced Movant to a total of 212 months in prison.  (*Id.*)  Movant also received full credit for acceptance of responsibility.  (Cr. ECF No. 140 at PageID 41.)  And Movant did not appeal.  But now he wants habeas corpus relief.

The Court will now address Movant's Amended § 2255 Motion.

## II.   Movant's Amended § 2255 Motions

In February 2018, Movant moved pro se to vacate, set aside, or correct his sentence under § 2255.  (ECF No. 5.)  In short, he complains about the lack of consistency among the indictment, the plea agreement, and the judgment as to Count 3.  First, he claims that he is actually innocent of Count Three for "possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)."[3]  (ECF No. 5-1 at PageID 62.).  He argues that the grand jury never indicted him for possession of a firearm in furtherance of a drug trafficking crime.  (*Id.* at PageID 64.)  Instead, he correctly claims the grand jury indicted him for using and carrying a firearm during and in relation to a drug trafficking crime.  (*Id.*)  Second, Movant claims that his counsel provided ineffective assistance at the plea stage.  (ECF No. 5 at PageID

---

[3] Of course this terminology is different than the language in the indictment.  (Cr. ECF 59, PageID 105).

46.)  He argues that counsel "never attempted to ascertain whether the factual predicate of the firearms offense were satisfied to inform him fully as to the essential elements of the 924(c) offense."  (*Id.*)  And so, his lawyer allegedly provided ineffective assistance to him.

## **STANDARD OF REVIEW**

### I.    **Section 2255 Standard**

Under 28 U.S.C. § 2255,

[a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).  "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid."  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

A § 2255 motion is not a substitute for a direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).  Indeed, "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  But this rule is not absolute:

If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively

outrageous as to indicate a "complete miscarriage of justice," it seems to us that what really is being asserted is a violation of due process.

*Id*.

Procedural default bars constitutional claims that a petitioner could have, but did not, raise on direct appeal—unless the defendant demonstrates cause and prejudice that excuse his failure to raise those issues earlier. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002); *Peveler v. United States*, 269 F.3d 693, 698–99 (6th Cir. 2001); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000). Alternatively, a court can review a movant's procedurally defaulted claim if the movant shows that he is "actually innocent." *Bousley*, 523 U.S. at 622.

After a movant files a § 2255 motion, the Court reviews it and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules"). If the court does not dismiss the motion, it must order the United States Attorney to respond, and allow the movant to reply. Rules 4(b) & 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). But "no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

Next the Court discusses the standard for an ineffective assistance of counsel claim.

## II.     Standard for an Ineffective Assistance of Counsel Claim

The standards stated in *Strickland v. Washington* control a claim that ineffective assistance of counsel deprived a defendant of his Sixth Amendment right to counsel.  466 U.S. 668, 687 (1984).  To succeed on this claim, a movant must show that (1) counsel's performance was deficient, and (2) "that deficient performance prejudiced the defense."  *Id.*  "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

To establish deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  And a court considering such a claim must apply a "strong presumption" that counsel's representation was "within the wide range of reasonable professional assistance."  *Id.* at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

To show prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.[4]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  But "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  *Id.* at 693.  Instead, counsel's errors must

---

[4] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant."  *Strickland*, 466 U.S. at 697.  If a reviewing court finds a lack of prejudice, it need not determine whether counsel's performance was in fact deficient. *Id.*

be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at

687; *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating that "*Strickland*

does not require the State to 'rule out'" a more favorable outcome to prevail, but "places the

burden on the defendant, not the State, to show a 'reasonable probability' that the result would

have been different").

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S.

356, 371 (2010). As the Supreme Court explained in *Harrington v. Richter*,

> An ineffective-assistance claim can function as a way to escape rules of waiver and
> forfeiture and raise issues not presented at trial, and so the *Strickland* standard must
> be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the
> integrity of the very adversary process the right to counsel is meant to serve.
> *Strickland*, 466 U.S., at 689–690, 104 S. Ct. 2052. Even under *de novo* review, the
> standard for judging counsel's representation is a most deferential one. Unlike a
> later reviewing court, the attorney observed the relevant proceedings, knew of
> materials outside the record, and interacted with the client, with opposing counsel,
> and with the judge. It is "all too tempting" to "second-guess counsel's assistance
> after conviction or adverse sentence." *Id.* at 689, 104 S. Ct. 2052; *see also Bell v.
> Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v.
> Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question
> is whether an attorney's representation amounted to incompetence under
> "prevailing professional norms," not whether it deviated from best practices or most
> common custom. *Strickland*, 466 U.S. at 690, 104 S. Ct. 2052.

562 U.S. 86, 105 (2011).

The Sixth Amendment right to effective counsel extends to the plea-bargaining process

and the two-prong *Strickland* test controls. *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012)

(citing *Missouri v. Frye*, 566 U.S. 134, 140–41 (2012)); *Hill v. Lockhart*, 474 U.S. 52, 57 (1985).

To establish constitutionally ineffective assistance in the plea-bargaining process, the movant

must show that counsel was deficient and that "the outcome of the plea process would have been

different with competent advice." *Id.* at 163.

Counsel's deficient performance during plea discussions generally falls into one of two

categories: (1) counsel failed to communicate a favorable plea offer to the defendant before the

time to accept the offer had expired; or (2) counsel gave materially inaccurate sentencing information or advice to a defendant who, based on that advice, rejected the offer and proceeded to trial.  *See, e.g.*, *Frye*, 566 U.S. at 149; *Hill*, 474 U.S. at 57.

A "substantial disparity" between the sentence offered in the plea agreement and the sentence the court ultimately gives is "strong evidence of a reasonable probability that a properly advised defendant would have accepted" the plea offer.  *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003) (finding that the court should hold an evidentiary hearing where the plea agreement offered a five-year sentence but the court sentenced defendant to 156 months); *Magana v. Hofbauer*, 263 F.3d 542, 552–53 (6th Cir. 2001) (finding that the difference between a ten-year plea offer and a twenty-year sentence was significant).  But an attorney's failure to insist that his client accept a plea offer due to overwhelming evidence of guilt is not constitutionally ineffective assistance.  *Id.*  "The decision to plead guilty—first, last, and always—rests with the defendant, not his lawyer."  *Id.*  Indeed, "[a]lthough the attorney may provide an opinion about the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made by the person who will bear the ultimate consequence of a conviction."  *Id.*

The Court now turns to the merits of Movant's habeas claims.

## ANALYSIS

### I.    Movant's Actual Innocence Claims

Movant alleges that he is actually innocent of Count Three because of a discrepancy between the wording of the superseding indictment and his plea agreement.  (*See* ECF No. 5-1 at PageID 62.)  The grand jury indicted him for using and carrying a firearm during and in relation to a drug trafficking crime.  (Cr. ECF Nos. 59 at PageID 105).  But the plea agreement described

Count 3 as "possession of a firearm during and in relation to a drug trafficking crime." (Cr. ECF No. 100 at PageID 201.)

In its response, the United States argues that, as a condition of the plea, Movant waived his right to appeal his conviction and his sentence, unless the sentence exceeded the statutory maximum or resulted from an upward departure. (ECF No. 10 at PageID 95.) And he waived his right to challenge the sufficiency of his guilty plea on direct appeal or in any collateral attack, except for claims of prosecutorial misconduct or ineffective assistance of counsel. (*Id.*) The United States argues further that the procedural default doctrine bars this claim. (*Id.* at PageID 96; ECF No. 18 at PageID 123–25.)

The procedural default doctrine bars a movant from raising claims in a § 2255 motion if he did not make a contemporaneous objection when the alleged error occurred in the trial court and if he failed to present the claim on direct appeal. *United States v. Frady*, 456 U.S. 152, 167–68 (1982); *Nagi v. United States*, 90 F.3d 130, 134 (6th Cir. 1996). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant first demonstrates either cause and actual prejudice, or that he is actually innocent." *Bousley*, 523 U.S. at 622 (internal quotations omitted).

To prove actual innocence, a § 2255 movant must show his factual innocence and "not mere legal insufficiency." *Id.* at 623. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). "Prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'"

15

*House v. Bell*, 547 U.S. 518, 536–37 (2006) (quoting *Schlup*, 513 U.S. at 327).  In fact, "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare."  *Schlup*, 513 U.S. at 324.

And so, to demonstrate actual innocence, Movant must show that he is factually innocent—"mere legal insufficiency" of the evidence is not enough.  *Bousley*, 523 U.S. at 623.  But based on the record here, Movant cannot do so.  First, Movant presents no "new reliable evidence" that was unknown or unavailable when he pleaded guilty or when the court sentenced him.  *See Schlup*, 513 U.S. at 324.  And second, the record establishes Movant's culpability.

The indictment charged Movant with carrying firearms during and in relation to a drug trafficking crime, and in the course of such offense, discharging a firearm in violation of 18 U.S.C. § 924(c) (Count Three).  (Cr. ECF No. 59.)  But the plea agreement described Count Three as "[p]ossession of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)."  (ECF No. 100 at PageID 202.)  Despite this discrepancy, it is clear from Movant's PSR and the recitation of the facts in the change of plea hearing that Movant carried and used a firearm during and in relation to a drug trafficking crime.

Movant did not dispute the facts in the PSR.  (Cr. ECF No. 164.)  And according to the PSR, Movant "had retaliated and shot at the persons thought to be responsible for the drive-by shootings at 1496 Standridge."  (Cr. ECF No. 140.)  What is more, at the change of plea hearing, Movant admitted to Judge Fowlkes that, during the shooting with Boyd at his house, Movant returned and exchanged fire.  (Cr. ECF No. 185 at PageID 760 & 770.)  He therefore cannot show his factual innocence of Count Three.

Here, "the record supplies . . . overwhelming evidence of culpability." *Luster v. United States*, 168 F.3d 913, 915–16 (6th Cir. 1999).  The undisputed facts in Movant's PSR and his

admissions at the plea hearing contain overwhelming evidence of Movant's guilt. *See id.* Plus, his plea serves as an admission that he is not innocent of violating 18 U.S.C. § 924(c). *Id.* In the end, Movant cannot demonstrate the actual innocence required to overcome his procedural default. *See Peveler*, 269 F.3d at 700 ("The 'hurdle' [a petitioner] faces in excusing his procedural default is 'intentionally high . . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal.'") (quoting *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000)).

The Court finds that the procedural default doctrine bars this issue and that his claim is without merit. The Court, therefore, **DENIES** Movant's request for relief on these grounds.

## II.  Movant's Ineffective Assistance of Counsel Claims

Movant alleges that counsel provided ineffective assistance during the plea proceedings because counsel "never attempted to ascertain whether the factual predicate of the firearms offense were satisfied to inform him fully as to the essential elements of the 924(c) offense." (ECF No. 5 at PageID 46.) He argues further that the language used in 18 U.S.C. § 924(c) differs from the language in the indictment and plea agreement. (*Id.*) Section 924(c) prohibits people from using and carrying a firearm "during and in relation to" a specific type of crime, or possessing a firearm "in furtherance of" such a crime. *See* 18 U.S.C. § 924(c). While the indictment charges Movant with *using or carrying* a firearm "during and in relation to" a drug trafficking crime, the plea agreement charges Movant with *possessing* a firearm "during and in relation to" a drug trafficking crime. (Cr. ECF Nos. 59 at PageID 105; 100 at PageID 201.) And so, the wording in the plea agreement differs slightly from the language in the indictment.

As a result, Movant argues that the statute's "in furtherance of" language required the United States to prove that "a defendant used that firearm with greater participation in the

commission of the crime or that the firearm is presen[t] in the vicinity of the crime." (*Id.*; *see also* ECF No. 5-1 at PageID 67.) The United States responds that, although possessing a firearm and carrying a firearm are distinct offenses, Movant "has failed to establish how he was prejudiced by this distinction." (ECF No. 10 at PageID 100.) This Court agrees.

### A.   Movant Cannot Establish Prejudice

As an initial matter, Movant has not met the prejudice prong for his claim of ineffective assistance because he does not allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59. And even if he had alleged that he would have gone to trial, Movant still fails to establish any prejudice here.

Movant and defense counsel stipulated to the United States' recitation of the factual basis for the charges underlying his conviction. (Cr. ECF No. 185 at PageID 760.) Movant, however, disagreed with some of the United States' phrasing. (*Id.*) Movant explained that he did not "hunt down Boyd" because Boyd was at Movant's house, where the shooting occurred. (*Id.*) Judge Fowlkes and Movant had the following discussion during the plea proceedings:

> The Court:   Now you're also charged in Count Three, possession of firearm **during and in relation** to a drug trafficking offense. Okay. Now – and it indicates that on January 31st of this year, you, along with Anthony Burrow, aiding and abetting each other **carried** firearms. And I think you see the firearms, a Glock and a Smith & Wesson, and it was **during and in relation** to a crime that's punishable, and basically the crime that you possessed the firearms was that conspiracy with intent to distribute the oxycodone as charged in Count One of the indictment. Do you understand that?
>
> Movant:   Yes, sir.
>
> The Court:   Well, again, if this were to go to trial the government would have to show that you, as well as Mr. Burrow, possessed, aiding and helping each other, but possessed those firearms **during and in relation** to that conspiracy offense. Do you understand?
>
> Movant:   Yes, sir.

| The Court: | And that in the course of and in furtherance of that case the offense of a drug conspiracy the firearms were **discharged** as part of the offense here. Is that true? |
| --- | --- |
| Movant: | Yes, sir. |
| The Court: | Okay. So you understand what you're charged [with] in Count Three of the indictment? |
| Movant: | Yes, sir. |

(Cr. ECF No. 185 at PageID 769–70 (emphasis added).) What is more, Movant did not object to

the PSR, including the paragraphs that explained how Movant violated 18 U.S.C. § 924(c).

To be sure, the parties sloppily drafted the plea agreement in this case. It stated that

Movant was pleading guilty to possession of a firearm during and in relation to a drug trafficking

crime, rather than carrying and discharging a firearm during and in relation to a drug trafficking

crime. (*See* ECF 100 at PageID 201.) But Movant cannot claim confusion where, under oath,

he told Judge Fowlkes that he thoroughly reviewed and discussed the superseding indictment

with his counsel and that he understood the charges in the indictment. (Cr. ECF No. 185 at

PageID 767.) Plus, during the plea colloquy Judge Fowlkes reviewed Count Three and discussed

how Movant carried and discharged a firearm during a drug trafficking offense. (Cr. ECF No.

185 at PageID 769–70.)

On this record, it is indisputable that the government could have established that Movant

carried and discharged a firearm during and in relation to a drug trafficking crime. The evidence

was strong. And counsel's advice that Movant accept the plea agreement was sound. If Movant

had gone to trial and a jury had found him guilty of violating all counts of the superseding

indictment, he faced maximum terms of twenty years in prison on Counts One and Six; a

maximum term of five years in prison on Count Two; a maximum term of life in prison on Count

19

Three; and a maximum term of ten years in prison on Count Four. And the Court was required to impose Count Three's term of imprisonment consecutively to the sentences on the other counts.

As a result, by entering his guilty plea, Movant substantially reduced his potential prison term and obtained a three-level reduction for acceptance of responsibility and a downward departure. To establish constitutionally ineffective assistance in the plea-bargaining process, the movant must show that counsel was deficient, and that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. But here, it is unlikely that any competent counsel would have advised Movant against pleading guilty under the plea agreement. Plus a "substantial disparity" between the sentence offered in the plea agreement and the sentence the defendant ultimately receives is "strong evidence of a reasonable probability that a properly advised defendant would have accepted" the plea offer. *Smith*, 348 F.3d at 552. Movant here received a significant benefit from the negotiated plea agreement, and a decision to reject the plea agreement would not have been rational under those circumstances. The bottom line is that he got a very good result. There is no evidence the outcome would have been better for him with other advice and the likelihood of a much worse outcome had his lawyer advised him to turn down this deal.

### B.    This Case Is Distinguishable from *United States v. Williams*

At first glance, the Sixth Circuit's opinion in *United States v. Williams* seems to control here. 475 F. App'x 36 (6th Cir. 2012). But as Respondent argues, the facts in *Williams* are distinguishable from the facts here. (ECF No. 18 at PageID 127–29.)

In *Williams*, the superseding information charged the defendant with possessing a firearm in furtherance of a drug trafficking crime. *Id.* at 41. But the plea agreement and judgment

labeled the conviction as "possession of a firearm during and in relation to a drug trafficking offense." *Id.* The Sixth Circuit found that the plea agreement and judgment "amended" the superseding information, so that the wording of the information was "an impermissible combination of the language of the first and second clauses of § 924(c)(1)(A)." *Id.* As a result, the Sixth Circuit held that the trial court had "sentenced [the defendant] for a nonexistent crime," and that it was "per se prejudicial to [the defendant] and constitutes plain error by the district court." *Id.*

But the facts of this case are distinguishable from those in *Williams* for two reasons. First, *Williams* brought his claim on direct appeal. By contrast, Movant here did not assert this claim on direct appeal, but instead raises it for the first time in his motion for habeas relief. Unlike a claim raised on direct appeal, a defendant raising an issue for the first time on collateral review must show either cause and prejudice, or that he is actually innocent. *Bousley*, 523 U.S. at 622. Movant gives no reason for failing to appeal his sentence. And as explained above, he has shown no prejudice or that he is actually innocent either. What is more, he readily admitted engaging in shootouts with Demarcus Boyd over a disputed drug transaction, the person identified in the government's factual basis.

Second, the plea agreement and judgment in *Williams* referred to the right offense conduct (possession) but the wrong standard of participation. 475 F. App'x at 41. The superseding information in *Williams* charged the defendant with possessing a firearm *in furtherance* of a drug trafficking crime, while the plea agreement and judgment listed the offense as possessing a firearm *during and in relation* to a drug trafficking crime. *See id.* While perhaps not dispositive, this difference from the language discrepancy in Movant's case carries some weight.

In ruling that § 924(c) criminalizes two offenses, the Sixth Circuit in *Combs* focused on the differences in the standards of participation.  369 F.3d 925, 933 (6th Cir. 2004).  As that court explained "the 'in furtherance of' language requires a higher standard of participation than the 'during and in relation to' language."  *Id.*  (citing *United States v. Mackey*, 265 F.3d 457, 461-62 (6th Cir. 2001)).   The *Combs* court noted "we conclude that 'in furtherance of' differs from 'during and in relation to' and requires the government to prove a defendant used the firearm with greater participation in the commission of the crime or that the firearm's presence was more than a mere coincidence."  *Id.*  In *Combs* the court found that the trial court's changing the standard of participation in the jury instructions and judgment amounted to an improper alteration of the indictment.  *Id.* at 935–36.  So it reversed the conviction on that count.  *Id.*

But here, the language describing the standard of participation remained the same in the indictment, plea agreement, and judgment.  The indictment charged Plaintiff with using and carrying a firearm **during and in relation to a drug trafficking crime**.  (Cr. ECF Nos. 59 at PageID 105.)  And, although the language for the offense conduct changed at times in this case, unlike *Williams* or  *Combs*,  the indictment, plea agreement, and judgment consistently referred to that same standard of participation—"during and in relation to" a drug trafficking offense.

All in all, Movant has not shown that the outcome of the plea process would have been different with competent counsel.  Movant has shown no facts indicating any prejudice to him.  The Court finds that Movant's ineffective assistance of counsel claim is without merit and **DENIES** his requests for relief.

## APPELLATE ISSUES

Under 28 U.S.C. § 2253(c)(1), district courts must evaluate the appealability of a decision denying a § 2255 motion and whether to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. § 2253(c)(2)–(3).  A movant makes a "substantial showing" when the movant shows that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011).  Also, courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).

Here, for the reasons stated above, this Court finds the Amended § 2255 Motion is without merit.  That said, this Court has found only one other case in which this issue was presented for the first time in a motion for habeas relief.  On facts more similar to those in *Combs* than to the facts here, the court in *United State v. Collins* granted the motion to vacate, set aside and correct the sentence.  *United States v. Collins*, No. 12-cr-20407, 2016 WL 4698570 (E.D. Mich. Mar. 10, 2016).  Even though this Court stands by its reasoning here, as shown by the result in *Collins*, another jurist may disagree with the result and reasoning.  And so this Court finds that Movant presents a question of some substance about which reasonable jurists could differ.  The Court therefore **GRANTS** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)–(b), does not apply to appeals of orders denying § 2255 motions.  *Kincade v.*

*Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997).  Rather, to appeal in forma pauperis in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status under Fed. R. App. P. 24(a).  *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit.  Fed. R. App. P. 24(a)(1).

In this case, the Court finds that any appeal would be taken in good faith.  The Court therefore **CERTIFIES** under Fed. R. App. P. 24(a) that an appeal in this matter would be taken in good faith.  If Movant files a notice of appeal and seeks to proceed in forma pauperis, he must first move with this Court.

## <u>CONCLUSION</u>

This Court finds that Movant's claims are without merit.  Movant fails to show that he is factually innocent or that his counsel's ineffective assistance prejudiced him.  And so, his motion, together with the files and record in this case, "conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Movant's conviction and sentence are valid.  The Court thus **DENIES** his Amended § 2255 motion.  The Court will enter judgment for the United States.

**SO ORDERED**, this 16th day of March, 2021.

s/Thomas L. Parker
THOMAS L. PARKER
UNITED STATES DISTRICT JUDGE